Case number 164341 Med Protective Company v. Center for Advanced Spine Tech et al. Argument not to exceed 15 minutes for the plaintiff and 15 minutes to be shared by the defendants. Mr. Janik, you may proceed for the appellant. Thank you. May it please the Court, if we may ask the Court's guidance. We are set for both motion, hearing, and oral argument this morning. You have to speak up. We don't have a microphone there at the podium. I'll project a little bit better. We are set for both motions. Before you get into that, do you want to reserve any time? Five minutes, please, Your Honor. All right. We're set for both motion, hearing, and oral argument this morning. And if we could have the Court's guidance as to how you would like us to proceed and address both. You can proceed however you want to. You're still limited to 15 minutes. If it please the Court, Steve Janik for Medical Protective Company, and I'll address the motion first and then to the merits of the appeal as well. The motion is to dismiss the appeal because it is now moot. Medical Protective's appeal is moot, as is the underlying rulings of the District Court, because the facts have changed since the filing of this appeal. Before the appeal, Dr. Durrani, Medical Protective's insured, absolutely, unequivocally, without reservation, refused to assist in his defense in the underlying proceedings and to attend trial of the underlying proceedings. That was the basis of the declaratory judgment, the summary judgment below, and the District Court's rulings. Since appeal, after several years, Dr. Durrani has in the last six weeks said that he will assist in the underlying defense of his cases, subject to certain parameters, which are now on remand of the underlying cases being addressed by the State Court. I had understood he had attached all kinds of conditions, how much time he wanted to give to depositions and that kind of thing, and then when you filed your motion saying that he had submitted a letter saying he would now cooperate, you didn't even attach a copy of the letter that would set that forth. So I don't know what he said. And there's nothing on the record that his position has been changed, other than your representation. Your Honor, we have filed a motion to supplement the record, including Dr. Durrani's letter of June 12th of 2017 and also his counsel's more recent letter of July 12th. Are you talking about that submission you sent in last night? And earlier, Your Honor. With our motion to dismiss, we had filed as an exhibit Dr. Durrani's letter, indicating that he would now cooperate subject to parameters. Where in the record is his letter? It was attached as an exhibit to the motion to dismiss. And the actual letter itself. Does that mean your motion for voluntary dismissal? Yes, Your Honor. Well, you're the appellate in this case. So if you drop the appeal, I'm not sure how they can object to it. Tell me about that. I guess they can tell me. But usually when an appellate wants to drop the appeal, that's the end of the appeal, unless you have to pay court costs or something like that. Your Honor, I don't believe that there's an issue amongst this as to dismissal of the appeal. I believe the issue focuses on the effect of that dismissal on the district court's ruling. Medical Protective submits respectfully that, in accordance with the Supreme Court's teaching in Arizona and this court's teaching in San Hagel, once the appeal is deemed to be moot, that the district court's decision should be vacated. Moreover, the district court in this case declined. The district court vacated the case anyway, didn't it, so to speak? That, Your Honor, I believe is the critical issue. The district court declined jurisdiction, but then nonetheless issued a ruling on summary judgment on the coverage issues. Medical Protective respectfully submits that this is virtually an advisory opinion that is contrary to the principles of justiciability and also fundamental fairness, and that, in accordance with the teachings of Arizona and Hagel, that decision should be vacated. Well, your motion for vacature of the district court is a separate motion or a separate matter. Given that we may address these matters if we choose to, the courts have not made a decision in that regard, we address those separately, the motion to dismiss and the motion for vacature. Do you still want us to proceed to rule on your motion to dismiss? By the way, you didn't say whether you were asking that we dismiss with prejudice or without prejudice the appeal. Do you still want us to proceed? Also, there's the problem that you called it a motion for voluntary dismissal, which I don't think that's what this is, because it doesn't satisfy the conditions for voluntary dismissal. There's been an answer to the complaint. You're in the middle of litigation, and we have to rule on your motion, preferably after hearing from your opposing party as to whether they have any comments or response to the motion. The motion was to dismiss the appeal as being moot, Your Honor, which goes to the jurisdiction of this court. Because of the change of facts, underlying facts below, mootness in jurisdiction would be raised in any proceeding by way of the appropriate motion. Well, we haven't decided if we agree with you that it's moot, and that might determine whether the dismissal would be with prejudice rather than without prejudice. The dismissal of the appeal, Your Honor? Yes, the appeal. The appeal, the dismissal, medical protection would be with prejudice, as there is the district court declined jurisdiction below, there's nothing to remand back to from that context. So the motion is to dismiss the appeal with prejudice. Wait a minute. You had this case on appeal notwithstanding the district court's ruling. That's right. So you didn't think the matter was moot when you initiated the appeal? It was not, Your Honor. The facts that have changed have developed since the appeal was filed. The new facts presented that render it moot only emerged in the last six weeks. But, counsel, your assertion is that because of the lack of cooperation, you're entitled to a blanket ruling of no coverage, right? That was our complaint below, yes, Your Honor. Okay. So now there is an end. The court kind of ruled against you, right? Most definitely, Your Honor. Okay. Well, I say that because you're challenging, you're saying there was jurisdiction, but then he addressed the merits anyway. So now we learn that the doctor is willing to cooperate a little, or to some degree, so that the facts, they may have changed, but they are even less favorable to your position, right? Because before you had no cooperation and you wanted to say this is non-cooperation and prejudicial in the whole business and you wanted a ruling, and now he's even cooperating a little. So it puts your position even further away from success. Is that a fair statement? If you weren't going to get a ruling on non-cooperation when he was totally not cooperating, you're not going to get one if he's cooperating a little. Your Honor, the ruling below that we appealed from held that prejudice was the standard on the duty to cooperate, and it is the compliance with the duty to cooperate that is the core of the issue below in this appeal. There are two prongs to that duty to cooperate. One is to assist in the preparation of trial, which has now changed and is still being developed. Two is the duty to attend trial. And from the standpoint of the appeal being rendered moot because of the change in facts, that does not render moot the issue on the failure to cooperate and the refusal to attend trial. The refusal to attend trial continues today, but it is subject to developing facts. From that standpoint, on the facts of the refusal to attend trial, it is undisputed. From day one through today, the position of Dr. Durante is he will not attend trial. That undisputed fact under the teachings of the Supreme Court of Ohio in Luntz v. Stern, where the facts are undisputed, breaches question of law. And where those facts have been presented, and there is no doubt that he will not comply with that duty, then that question of law still prevails. And even on the supplemental record, which we have submitted to the court, which is subject to the state court's rulings, under the facts as they are presented today, he has refused to cooperate, and that in and of itself is a breach of the duty to cooperate that warrants reversal of the district court in judgment for medical protectors. But that was just an argument against mootness, a very effective one, right? I'm sorry, Your Honor, I just don't follow your question. I don't follow your reasoning. I mean, you just told us why the appeal is not moot. The appeal is moot from the standpoint of the record, Your Honor, and the record before this court. All of the facts that have now come forward on his current position are just coming in. We just heard some yesterday. That's why we made the late filing. I thought the court's question was what remains of those arguments on the duty to cooperate under these facts. No, not at all. My question was that if you were going to lose before, these new facts certainly don't help you. I agree with that, Your Honor. Okay, so how is it moot if there are some new factual developments that hurt your case even more? I mean, basically, if the plaintiffs were going to win, they were going to win even more now. If the court accepts the district court's analysis, that is true. That's right, but that's what's on appeal. So how is that moot? Because before this appeal, Your Honor, there was nothing but an unequivocal rejection of both prongs of the duty, of the cooperation of compliance with the duty to cooperate. We now have an undetermined statement by Dr. Durrani that he will assist, that he will cooperate in the defense, but without development as to, at this point anyway, as to whether he will attend trial. So those facts have changed the basis of our appeal. I hear what you're saying, but it doesn't make sense to me. But let me just ask you this. Shouldn't the trial judge be the one that decides whether this moots things? Your Honor, I would suggest that since this is an over-review and it is a question of law from a medical perspective standpoint as to whether or not there has been a failure to cooperate, that the appropriate remedy is reverse and inter-judgment for medical protective. To the extent that there are issues as to the scope of that cooperation, with the district court having declined jurisdiction, I think the court would have to address that threshold issue as to whether there is even the ability at this point to remand back. So if the court declined jurisdiction, what is the legal effect of its other decisions? That is the problem, Your Honor. We respectfully submit that it is virtually an advisory opinion, that it never should have been issued, that he simply should have decertified the class and declined to accept jurisdiction on the declaratory judgment action and dismissed the matter outright. Okay. So what if the jurisdictional decision is dependent on facts? In other words, he can't reach the jurisdiction issue unless he decides certain other issues, like whether prejudice is required. And so he decides that, and then that enables him to decide the jurisdiction question.  I believe he exercised his discretion to entertain the declaratory judgment action after decertification of the class, which required no decision as to the merits of the proceedings before him. He did not have to rule on the summary judgment to exercise his discretion to decline jurisdiction. And we submit that's what should have happened in this case, and that's why we're seeking to have the district court opinion vacated. All right. You've been out of time. I apologize, Your Honor. That went quickly, as always. If you may please the court, I am David Walulik here for Westchester and UC Hospital. I'll address the issue of whether this appeal is moot. By the way, how are the two of you dividing your 15 minutes? Ten and five. All right. Thanks. I'll address the issue of whether this appeal is moot first. There were three aspects of the district court's opinion. Number one, summary judgment was denied for an issue of fact. Number two, they decertified a class, Judge Black. And then number three, he declined jurisdiction. The new evidence that's been put into the record only relates to the summary judgment. Medical protective moved for summary judgment here without any discovery. What Judge Black held was that there were issues of fact which precluded summary judgment. All they've done is introduced new facts into the record, which would accumulate to more issues of fact, as Judge White, Your Honor, recognized. Whether Durrani is going to cooperate or not hasn't been proven. This isn't where we've established that this cooperation clause defense is now complete. All that's been put into the record is a letter saying that he might cooperate and he wants to put some conditions on that cooperation, but we have no idea how that's going to affect each one of these underlying cases. I just want to make sure I understand this. I'm sorry. The basis for jurisdiction was CAFA? The basis for jurisdiction was a declaratory judgment. The Ohio Supreme Court in 2010 issued a case called Heintzelman, which is cited within our briefing. What Heintzelman provides is that Ohio has a direct action statute, which even though you're not a policyholder under a policy, you can sue the insurer if you first obtain a judgment and it goes unpaid for 30 days. What Heintzelman held is that for an insurer to bring a declaratory judgment, they have to join every single party who could be a potential 39-2606 statutory direct action plaintiff. So that's how we got here before the court. With regard to the mootness issue, the three aspects of the trial courts. You say that's how you got here. So they started a death sentence. Medical protectives sued for declaratory judgment. Heintzelman required them to join not only every underlying plaintiff, but also my clients who are hospitals who have potential indemnity actions. Are you admitting or denying it's a moot issue right now? Well, if they want to dismiss the appeal, that's fine, but the trial court's decision has to stand. What we oppose is they want the trial court's decision to be vacated. Couldn't we just dismiss this appeal and leave it up to the trial court to make bad decisions, whether it wants to vacate it or leave it or what? Well, the trial court's decision would be a final decision on the merits back in October of last year. So there would be nothing to reconsider. The trial courts already considered these issues. The issue on appeal, they're trying to use a procedural motion to dismiss to reach the substance of reversing the trial court's opinion by vacating it. The trial court's decision became a final order when it was issued in October. They had 30 days to appeal it, which they did. If they want to dismiss that appeal, that's fine, but the trial court's decision has to stand. There are no grounds to make it. You agreed to the dismissal of the appeal. You're just saying we shouldn't have a vacature in this. Right, because what Judge Black did was he held that there's prejudice as an issue of fact in each one of these over 400 underlying cases, and that if medical protective wants to litigate coverage on a cooperation defense, it needs the facts of each one of those underlying cases. At the time summary judgment was briefed here, Durrani actually won three or four defense verdicts. Without showing up. I'm sorry? Without showing up or without giving a deposition, right? Without showing up, correct. Does that mean there's no prejudice? We would argue that prejudice has to be determined in each case. That's what the Ohio Supreme Court's held, that it's an issue of fact, number one, and that the facts of each case have to determine prejudice. That's pretty much what the district court said as well, isn't it? Correct. Yeah, that's exactly what Judge Black held on page eight of his opinion, which is 7120 of the record. He outlined the syllabuses of both Weaver and Costa, which established the basic points on Ohio law. So your position, your class position, is that the matter doesn't appear to be moved. However, you have no objection to the dismissal of the appeal. You do object to this court vacating the district court's order. That's correct. We object to vacating the order because what the district court held was that coverage has to be determined in each one of these underlying cases. We want this order to apply as res judicata as to every plaintiff who was party to this and as collateral estoppel to any party who was not. It's a final decision on the merits. So if Medical Protective chooses to litigate coverage in each one of these underlying cases, as Judge Black held they should, then we still have to establish, number one, that there was prejudice, a breach of the cooperation condition, and number two, that there was prejudice as a result of that. And what about the whole jurisdiction thing? Why wasn't it advisory? It wasn't advisory because this court has a five-part test to determine whether jurisdiction was proper under the Federal Declaratory Judgment Act. It's an abuse of discretion for Judge Black to run through that test. But in order to do that, he has to consider the five factors. If it's an advisory opinion in every instance, you could never reach those five factors. So what Judge Black had to do was say, okay, what is the issue of coverage here that's in dispute? It's a cooperation condition. What are the elements of that? I'm holding that as an element, prejudice is required, and as an element, prejudice is an issue of fact because that's what the Ohio Supreme Court has held. Once he determined that, then he ran through the five factors and determined that this is not going to settle the controversy by keeping a federal declaratory judgment in federal court. Each of these underlying factual issues needs to be determined in the underlying cases because every one of them are going to be different. You're going to have different patients with different treatment that was provided. Some of it may have been fraudulent, some of it may not. Is it what I said before when I asked the question, well, what if in order to decide whether there's jurisdiction, he has to decide that issue, whether prejudice is required? That's correct. In order to apply the five-factor test, he has to determine what's the correct standard for coverage. He has to determine what test needs to apply for coverage because if a declaratory judgment is going to settle the controversy as part of that five-factor test, he has to determine what the controversy is. What are the elements of the claim for coverage and how are they applied? Once he determined the proper tests, he realized that the test requires a factual predicate in each one of these underlying cases, therefore used his discretion to dismiss them and send the coverage issues back to each one of these underlying cases. But you do agree that you may want it to be raised judicata or be collaterally stopped in future cases, but that's something that another court is going to have to decide. The test is the test, Your Honor, and we would just want to prevent Medical Protective from arguing that prejudice is not required, as they have throughout these proceedings. If these cases go back down to various state courts or wherever these cases are pending, we just simply want to have the correct test applied. Cooperation clause requires prejudice, and prejudice is an issue of fact, so you have to establish it. The whole reason we're here is that Judge Black determined there was no discovery as to prejudice. They moved without any discovery in the case, and what he held was there were a variety of issues that could impact prejudice, and therefore there were issues of fact that precluded summary judgment as a procedural matter. Then substantively, whenever he looked at the jurisdictional issue, he determined that because prejudice is an issue of fact and we have over 400 underlying cases here, you need to determine that in each one of these cases. When they go back, I mean, that type of decision, well, I guess you can argue it in state court about that, but okay. Judge Seiler, you had a question about whether we have a right to object. Have I satisfied your questions about that? Okay. And then, Judge Clay, you had some questions about the conditions that Durrani was placing on his deposition? Well, yeah, and I understand he's not said unequivocally that he's going to cooperate. He's got conditions he wants to apply. Yeah, that's our position, is that this doesn't mood anything. All this is is additional evidence that there are additional factual issues as to whether there's going to be cooperation in the future. In fact, we didn't make a motion to clutter this record with additional evidence on appeal, but there's been correspondence going back since June, even through yesterday, as to what Durrani's going to do to cooperate, what he needs to do, whether he's going to appear for one deposition a week, whether we have over 400 plaintiffs, how those cases are ever going to get to trial if he's only doing one deposition a week. There are a variety of factual issues here, which is exactly the point. Is there a possibility of him being, the doctor, being charged criminally with some of this alleged fraud if he comes back here, which I imagine would be a disincentive to him to come back at all? He's already been charged, Your Honor. That's why he fled the jurisdiction. Where the process stands, as I currently understand it with the U.S. Attorney's Office, is that Pakistan and the United States have an extradition treaty, which goes back to 1948, but they're trying to get Pakistan's cooperation with that extradition. We briefed this issue in our appeal somewhat briefly, but they're not getting a whole lot of cooperation. Well, if he's extradited, he can attend the trial. He would be like any other prisoner who's incarcerated. Extradited or something like that, sure. There are a variety of civil cases that move forward with folks who've been incarcerated for their crimes. All right. Let's see that you're out of time. Morning, judges. My name is Robert Winner. I represent the individual Dr. Durrani, former patients in this case. They were Crystal Pierce, Kathy Beal, Wayne Beal, and Joanne Frazier. Just to start off with, Judge White, I think you asked about? Keep your voice up, I'm sorry. I'm sorry. I just wanted you to keep your voice up. I'll do my best. Thank you for alerting me. There's a question about the subject matter jurisdiction of the courts. There's some discussion about the Federal Declaratory Judgment Act being a source in federal jurisdiction. I don't believe that can be the case under the Skelly Oil case decided by the United States Supreme Court. So we're left with CAFCA, the Federal Class Action Fairness Act of 2005. And I briefed this at page two of my memo, but that statute deals with classes of plaintiffs. And here we're dealing with classes of defendants. Well, do you admit that Ohio law requires the insurance company to sue everybody who might have a claim on such a? Yes, but we're in federal court. Well, I understand that. But don't you follow Ohio rules about that? I'm sorry? Aren't the Ohio rules and the Ohio law applicable under this case? It's a procedural matter. And the Federal Declaratory Judgment Act ought to provide the rule of decision. Are you saying you follow the federal procedural rules in this situation, but the Ohio substantive law is on these issues? Is that what you're saying? Ohio substantive law would govern, yes. But it applies to classes of defendants or classes of plaintiffs. And here we have classes of defendants under CAFCA. And that provides the substantive basis. I'm not sure what your point is. I'm sorry. You lost me. I'm sorry, Judge White. It has to do with the subject matter jurisdiction of this court. Are you arguing? I'm calling it to the court's attention that we may not have subject matter jurisdiction here in the first instance. We have an appeal from? From a final district court order. Right. Yes, but it wasn't raised. It wasn't called to anyone's attention until now. And subject matter jurisdiction of a court can always be questioned. But there was a declaratory judgment, wasn't there? That was, yes. And there was no diversity in this case? I believe plaintiff is an Indiana corporation. I know that some of my clients are Indiana citizens. Okay, so the sole jurisdiction, that's what I asked in the beginning. Was it under CAFCA or was it under something else? My contention is that it's under CAFCA. And under CAFCA, CAFCA deals with classes of plaintiffs at 28 U.S.C. Section 1332D to A through C. It doesn't deal with classes of defendants. What's your position about the dismissal of this case as filed by medical protective? You say that it should be dismissed? Yes. Okay. It should be dismissed. And vacated? The order should be vacated? Yes, we've taken that position under the Ford case. They meet the two qualifications of Ford. I think that's the second name. You think they can sue all of these potential claimants in separate cases? That's right. That's what should be done. That's what should be done. If, I mean, right now my clients have a one to four batting average against Dr. Durrani. We've lost four cases. He wasn't there. The one case where he provided a deposition, we won, but he wasn't physically there. He left the country just before that trial. And the others we've lost. Okay, let's talk about the case you won. I'm sorry? The case you won. Yes, ma'am. What is going to be happening with that to determine coverage? Has coverage already been determined? Coverage has been determined, and I can represent to the court, Mr. Janik, I think you'll agree that the judgment's been paid by Medical Protective. How was the prejudice issue decided in that case? I don't think it was brought up. Medical Protective paid that portion of the judgment that was covered under its policy. Okay, so they never contested. They settled with us, yes. Yes, ma'am. They settled, but I'm asking before they settled, did they contest coverage in that case? No, it was not brought up. It was brought up here, but it wasn't brought up in the underlying state court action, ma'am. Okay, so you're saying that you should try your cases. If you lose, they go away, and if you win, then what? Then there's a determination of prejudice in each case. Each case is different. The wisdom of that very principle is set forth in Judge Black's opinion. Let's just say, for example, we lost. Carte Blanche, the policy's terms are a condition precedent, and we lost the condition precedent. No coverage. And then Dr. Durrani shows up with a videotaped deposition from Pakistan and gives us testimony. Well, then where would we be? You know, the plaintiffs here would be the ones that are prejudiced by his change of position. Meanwhile, I have a final judgment saying that there's no coverage for all time. That can't possibly be right, and the decision in Weaver deals with that. I just want to wrap up. Your life's been on there for a while. It sure has. I was trying to answer a question. Thank you for your time. Thank you very much. Any rebuttal? Yes, Your Honor. How much can I indulge in court just for a few comments? I know I'm well over time. Your Honor, with respect to your inquiry on the citizenship, we had moved for a class action, and I believe that under diversity, which we did plead as an alternate jurisdiction, it is the citizenship of the representatives of the class that is dispositive. We did have diversity as an alternate jurisdiction to CAFA to respond to the court's question. Secondly, also to respond to the court's question, we did reserve rights as to the Pierce case, which we did settle ultimately after that judgment was returned, but we did raise our coverage issues and preserve them, and Pierce was a named representative of the class. We did address coverage here as well. We reserved our rights in the state court action and pursued them here. Thirdly, there's been a great deal of discussion about prejudice, and respectfully, that's a red herring. And it's a major red herring. The declaratory judgment action was based upon the refusal to cooperate whatsoever, which we held was a question of law under Luntz v. Stern. The teachings of the Supreme Court in Luntz are very clear, where there are undisputed facts as to the refusal to cooperate that then becomes a question of law. No dispute. Those facts have changed on appeal, and we don't know what has happened with those facts, which is why the appeal is rendered moot. If this Court accepts that the appeal is moot, the teachings of the Supreme Court in Arizona, the holdings of this Court in Hagel and other cases, we respectfully submit are clear that the underlying decision then should be vacated as well. Counsel has said why he wants the underlying decision. He wants it to be raised. He says what? I'm sorry. Counsel has said why they want the underlying decision. They want it to be raised judicata. They want it to be binding. They want prejudice to be the standard. Weaver, that they rely upon, nowhere mentions the word prejudice. The district court used Holcomb, a court of appeals case, to take Weaver and try and extend it to a prejudice standard. Holcomb is a court of appeals based on Missouri law, using different policy language for a proof of claim, not for a duty to defend that has never been cited by the Supreme Court of Ohio ever. Why didn't you ask to get the question certified to the Ohio court? Your Honor, that was contemplated. At this stage of the proceedings, I think that the court can certify, but that I don't have the ability to file a motion to certify it to the Supreme Court. I think that's something that you can do, Souspante, but that is no longer subject to motion practice. I know, but why didn't you just stay in state court? We filed the D.J. in federal court, Your Honor. I know. The state court proceeding, we would have to have waited for a judgment and then 3929.06 is not a direct action statute. It is a supplemental complaint statute. Only after the judgment was rendered could we then contest it on coverage and proceed up through those ranks. Because there had been no duty to cooperate under Luntz, we believe the appropriate mechanism was the D.J. in federal court as a class to address all of the issues at once. But for this change of facts on appeal, we believe as a question of law on the record before the court and the underlying court that the district court erred in applying a prejudice standard. The district court is the first court that has taken Holcomb and grafted down Weaver and said prejudice is part of the cooperation defense. Cooperation is a condition proceeding. It's not a defense. It's a condition proceeding to coverage. And unless it's satisfied, there is no coverage.  That's why Luntz held it's a question of law. Luntz doesn't mention prejudice at all. Those facts were undisputed until we were on appeal, and now they've changed. The effect of that change, we think, is what renders the proceedings below moot because they were never considered. And in the proceedings below where the court should have, after it had certified the class to simply dismiss, there was no need to address the merits of this case to issue an advisory opinion, should have exercised the discretion to dismiss the appeal. I have no problem with that. What the district court has done with that advisory opinion is adopt an erroneous standard that if it's going to stand as the police are urged, that we would ask the court to consider on the merits, look at Weaver, compare Luntz with it. There is no standard of prejudice as the district court is attempting to impose here. Okay, but then you need us to address the merits. Yes, Your Honor. That's why I asked for guidance on whether we're doing the motion or the merits. No, but it's not moot. I mean, it just shows that it's not moot. From the standpoint of the record before the court as supplemented on the ongoing refusal to attend trial, and he's never going to attend trial, I would agree with the court that the merits should be addressed on that issue. The record is not developed below but is before the court with the supplement. Thank you for your patience. I'm rebuttal, Your Honor. Thank you very much. The case is submitted. The clerk may call the next case.